Farmland Partners. We'll hear from the appellant. Thank you, Your Honor. May it please the Court, Chip Schoenberger on behalf of the appellant, Rhoda Fortunae. Your Honors, we're here today because the District Court denied my client's motion to dismiss under a Texas statute known as the TCPA, which is often categorized in the broader category of anti-slap statutes. The judge denied that motion without prejudice, simply as a way of deferring the issue until it could rule on a motion that the plaintiffs had brought to remand the case back to state court. The problem with that ruling is that under a plain reading of the Texas statute, it effectively barred my client's right to seek a remedy under that statute. And so this raises two issues that I'll focus my limited time on today, and I'll start with the one that the Court ordered supplemental briefing on. And it barred your ability to seek a remedy. Why? Excuse me? Barred your ability to seek a remedy. Why? Because under the Texas statute, there is a strict 60-day filing deadline. The motion has to be filed within 60 days of service, and it is a waivable remedy. So in our case, the motion was filed on the 59th or 60th day. The Court denied that motion, and under the plain reading of the statute, the statute doesn't contemplate a refiling of the motion. We would be barred under that plain language. And are you talking about under a deemed denied idea? No, no. Under the filing deadline, if the motion is denied and is effectively not in front of the Court, then in order to revisit the motion, it would have to be refiled. And you did refile it, right? That is correct. All right then. So how do you say you're denied a remedy? You are in fact seeking a remedy. We did refile the motion because of the procedural posture of the case and because we didn't want to run the risk of waiving that right. But again, under the plain reading of the statute and the cases, that motion has to be filed within 60 days. The refiling necessarily would occur outside of that time frame. And you say the statute doesn't say what happens in that situation. So why are you insisting on the notion that you were barred from relief? I mean, that motion, by your own admission, is gone now. It has no effect. And so if you were to refile, I mean, and the Court contemplated, invited you to refile, and you did refile. So, I mean, if you're saying that you did it prophylactically, there's no reason to believe that you can't seek a remedy now. Well, the Court hasn't ruled on the issue, the statutory interpretation or the application of the 60-day deadline. Admittedly, prophylactically, we filed to make sure that we didn't waive that right. I believe under the plain language of the statute, and because the Texas courts do not contemplate this scenario, they have said that the only option when a TCPA motion is filed is granting or denying. There is no concept within that statutory framework for a denial without prejudice and a refiling. And I would point out that because of the timing components of the statute, allowing that to happen would defeat the entire purpose of the statute. The purpose of the statute, in part, is to constrain the time frame that it takes to resolve these motions. They're supposed to be resolved quickly. There is a filing deadline. There is a ruling deadline. There is an appeal deadline. Those are all very strict. And so to allow a denial without prejudice, an indefinite period of time, and now we're going on almost a year, would defeat the entire purpose of the statute. All of this contemplates that the TCPA applies anyway. Correct. Well, let me ask a different way. If you have initially a question of whether you have jurisdiction, period, whether we have jurisdiction over this matter, whether this is a final order, and whether it fits within the collateral order exception, and if we just look at what took place here, you have a decision. You have a decision that has been made without prejudice. Proceedings are still ongoing. You have, in fact, participated in those proceedings. You have, in fact, refiled your motion. Where is the finality in any of that? It goes back to the original question of my answer to that, which is, yes, we physically refiled the motion. That does not mean that, under the statutory scheme, that motion is proper or valid. It just means that we physically filed it. Now, it's a question of law. Well, have you waived any ability to claim to the contrary? I mean, have you waived any ability to claim somehow or other that the decision of the district court was final? I mean, by acting on the premise that it is not final. You have acted on that premise by, in fact, taking the district court up on its invitation to refile. So, I mean, you're before us saying, well, you know, this thing is final, and therefore we've been harmed, and we need to be able to appeal, while you're acting below as if it's not. And so isn't there a problem with that in terms of litigation conduct and the ability to create a waiver? I don't see it as a waiver problem, Your Honor, because we did file the notice of appeal. We filed it within 30 days under the collateral order doctrine, and we sought that remedy in this. But the question is whether you're in that doctrine. Whether you are under that doctrine is the question, and whether what you've done is final. Whether that order is a final order. The district court certainly doesn't view it as such. That's correct, but it's a question of law that the district court has not determined. Is the district court's ruling final as regards your instantaneous ability to obtain relief under the TCPA? I mean, this thing sort of feels like a qualified immunity, interlocutory appeal kind of problem. If life goes on in the district court, you've lost the ability to have any teeth in the TCPA, which is, I think, what you're trying to assert. That's exactly right, and that's the rationale under the Los Lobos case. Because the statutory provisions contemplate an immunity-like ability to avoid litigation and to accelerate resolution of the motion, by depriving us of that, forcing us to go back to the court and refile, go through that process, that defeats the entire purpose of the statute. That's the reason why the collateral order doctrine applies in this case. And the refiling, or excuse me, the taking of the appeal is our assertion of the right to seek that remedy in this court, because the ruling, I believe, under the plain reading of the statute, is final. But in Los Lobos, the district court actually made a decision whether the TCPA applied or not. Correct. And in some sense, it made that threshold determination. There's been no threshold determination made here. This district court denied it simply to conduct some discovery, which later turned out not to be something that was going to take place. But that's the reason. So this is not the same as Los Lobos in that situation, is it? It's not in that situation, but I think the practical effect is the same. Because if we are precluded, despite the fact that we did refile the motion prophylactically, if as a matter of law, we are precluded from having that motion heard because of the plain language of the statute, then it is final. Well, let me... Sorry to interrupt. If I could just finish my thought. Sure, of course. As far as the Los Lobos decision goes, because this is a final decision and we asserted our right, that is the predicate of the conclusiveness point or element of collateral order jurisdiction. There are other issues, the three other stages of that as well. And as Judge Briscoe pointed out, the effectively unreviewable piece of it is really, I think, indistinguishable from Los Lobos on the other two issues. Because we have the separate issue of what was the reason for the court having done this? And we think that is erroneous. The court did not address the merits of the TCPA motion. Although, just as an aside, it has now indicated in subsequent proceedings that are not in the appendix materials, but they are in the district court record, the court has indicated that it believes that the TCPA does not apply in federal court. Has that been supplemented? Do we have that in our record? Are you telling us now? It was a post-appeal and post-briefing material, so it's not in the appendix materials. It is in the district court record, which the court has access to. I'm happy to supplement if it's necessary. So the district court, did it enter a decision then? Not a decision on the TCPA motion. The court denied our motion to stay pending appeal, which we filed because all of these issues are currently before your honors. And we believe that divested the trial court of jurisdiction to continue on with rulings in this manner. But because in the context of denying the motion to stay, the court indicated it believed that the TCPA did not apply in federal court. However, the TCPA motion, the refiled one, is still pending, and the court has not issued a ruling on that. So long story short, the district court has not at this point decisively ruled on the application of the TCPA. Correct. That it does or does not apply. Correct. Well, to that point, it is a different posture than Los Lobos, and it seems to me a very sort of tricky situation because it seems to me the whole predicate of your satisfaction of collateral order doctrine is the fact that the TCPA applies. We don't have a ruling that the TCPA applies one way or the other, which is not the situation in Los Lobos. And because of that situation, is it the case, is it your belief or position that we have to make that initial threshold determination ourselves in order for you to satisfy the collateral order doctrine? Not the determination of the, well, no, I think conclusivity exists because of the statutory framework and the 60-day filing deadline. Well, that's if the TCPA matters. So I'm asking, do we have to say here whether the TCPA applies in order to determine that you satisfy the collateral order doctrine? If we push the TCPA aside and view that as an entirely discrete issue, do you satisfy the collateral order doctrine? Yes, I think we do. And why? Because of the refiling limit. It's a TCPA matter, right? Sorry? It's a TCPA matter. The point I'm making is if you divorce, can we divorce your argument for collateral order satisfaction from the TCPA? The refiling issue is a TCPA creature. So the question is, because you've refiled the motion, you're just saying that you don't think it's effective under the TCPA. Can you say that you satisfy the collateral order doctrine apart from the TCPA and its filing requirements? No, I don't think you can. Okay. So, move on to the point that was raised about the TCPA's application in federal court. We have a circuit split on this issue, a high-level one with regard to anti-SLAPP statutes in their application in federal court, although all the circuits have dealt with different specific anti-SLAPP statutes. But, the main difference between those cases, like the First Circuit's decision in Godin and the Fifth Circuit's decision in Clockey, those two schools of thought, is in their, the manner in which they approach and address the eerie question of what happens when a state law appears to overlap with a federal rule. And, everyone agrees that that's a three-step analysis. One, we look at whether or not the state law is substantive. Two, if it is, we look at whether it directly conflicts with a federal rule. And, three, if it does, we look at whether the federal rule is valid. Now, I'm not here today arguing that any federal rule is invalid. The issue and where the cases diverge is on the first two steps. And that's where we look to the controlling concurrence in Shady Grove. In that concurrence, Justice Stevens recognized that state laws, even though they may function in a procedural manner, can operate to define a state substantive law. And, that's exactly what we have done at the DCPA on really two levels. It was created, or the statute creates a class of cases, a narrow class of cases to which are subject to dismissal under its provisions. And those provisions are substantive. We have a burden-shifting framework. We have a standard for evaluating the plaintiff's burden under that shifting framework. We have a damages component that includes attorney's fees. And then we have the timing components which, to Your Honor's point, create an immunity-like right to accelerate resolution of those claims and avoid protracted litigation. Normally I would stop you here, but I think this matter requires a little more argument time than you all have asked for. I will give both sides five additional minutes. You can continue your argument. Thank you, Your Honor. So, when that's the case, when you have a substantive state law, we move on to the second step, and that's the conflict step. And Shady Grove, the concurrence, also directs us on that. And it says that we must endeavor to see if there is a way to reasonably interpret the federal rule so as to avoid a conflict and allow the state substantive law and the federal rule to operate side-by-side if we can. And we have an example of that in Walker, which predates Shady Grove, but foreshadows that framework. And in that case, the court looked at Rule 3, which says, a lawsuit commences upon filing. Compare that to a state statute that said a lawsuit commences upon service of process for statute of limitations purposes. And the Supreme Court harmonized those by looking at the intent of Rule 3 and saying that Rule 3 was never intended to control limitations periods, even though on their face they appear to be at odds with each other. So, now compare that with Shady Grove, where you had a unavoidable direct conflict between Rule 23, which granted an affirmative right to maintain a class action if you met the requirements of that rule, and a state rule that limited that right. That was an unavoidable conflict, and even Justice Stevens, under his framework, found as such. So, the anti-SLAPP statutes that we're dealing with here, as a general category, they look at Rules 12 and 56. And the First Circuit in Godin held that when you look at the intent of the rules, they don't answer the same question. They don't serve the same purpose. Rule 12 and Rule 56 don't attempt to address the legislative concerns that statutes like the TCPA have with regard to free speech rights and protecting those rights. They function differently. They have different standards that they're reviewed under, and they can coexist under this Shady Grove and Walker and even Gasparini type of framework. So, the way that the clocky line of cases treat this strays from that framework because it does exactly what Justice Stevens cautioned against. It takes a narrow approach to determining, first of all, step one, whether or not the statute is substantive or procedural. And essentially, they say that if the statute looks to other sources of law to determine the elements of the plaintiff's underlying claim, then it has to be procedural. It can't be substantive. That is not what Justice Stevens' framework in Shady Grove proposes. It doesn't engage in the recognition of substantive rights that are wrapped up in procedural mechanisms. Second, that line of cases takes a presumptive view of Rule 56 and Rule 12 and it presumes a sort of preemptive occupy the field type of approach and says essentially anything that adds to the federal rules is in direct conflict with it. And that is not in the spirit of the case in the other cases that engaged in the attempt to harmonize and allow the state rule, the state substantive law, and the federal law to operate together. I would like to reserve my last one minute for rebuttal if that's okay. Thank you. Thank you. Thank you. Good morning. May it please the court. The appellant, Rhoda Fortuny, who I will refer to as RF, I find that easier to say, appeals from an order that did not resolve whether the applicable choice of law principles permit or require application of the TCPA, which is a gating issue before you get to the TCPA. The district court did not resolve whether the TCPA can apply in order for commercial speech. The district court's order also did not resolve whether the TCPA would require dismissal of the defamation and disparagement claims. And the district court's order also did not resolve conclusively whether the TCPA would require dismissal of the disparagement claims. And we know that the district court did not conclusively determine those questions. Yes, but to the conversation that was going on with opposing counsel, that puts RF in a very difficult situation. Because if the district court decides not to make an initial threshold determination as to whether the TCPA applies, then the benefit that they would get from the TCPA evaporates. The notion to analogize this to the problem that we are going to have to come to grips with is what to do in a situation like this where the district court essentially hunts on a threshold matter which affects conceivably the rights of RF. What do we do in that situation? Because the reality is somebody is going to have to decide that issue as to whether the TCPA applies. Because otherwise they don't have an opportunity to have that right vindicated one way or the other. Your Honor, I disagree with the TCPA on multiple grounds. The first one being, why did the district court do what it did? The district court deferred briefly consideration of the motions to consider its predicate issue of federal jurisdiction. It didn't have to deny the motion. The point is, by denying the motion, it has created this situation. Yes, I'm familiar with the procedural history. I know what it was trying to do. The point is, there is an effect that derives from what it was trying to do if the TCPA applies. It didn't do up and down as we had in Los Lobos. It just punted. It didn't do anything. Your Honor, I think the technical terminology for what the district court did, which he did, is akin to the stays of proceedings that this court has routinely held. The question is, whether the district court's ability to do   was trying to do is a question that was improper where the TCPA says the court may extend the time to file a motion under this time and I believe that's what the court was trying to do. The delay that has been incurred is RF's own fault. This is a procedurally odd case. At that hearing in 2015, RF appeals. At the next hearing, the district court made clear it believed it still had jurisdiction but RF's counsel said no. The district court thought this created yet another jurisdictional issue. Finally, RF had not yet moved to reconsider the state court order. Once RF did so, the district court could rule on the motion to remand. The perversity is that the motion is a claim of harm where there are two key issues on which RF has taken a firm position and reversed course despite imposing burdens on this court, the district court and my client. RF takes a firm position and refiles the motion. Entirely inconsistent. RF moves for a stay before this court claiming irreparable harm. This court denies. RF goes to the district court and seeks a stay before this RF  the district court and seeks a stay before this court claiming irreparable harm. RF goes to the seeks a stay before  court claiming irreparable harm. claiming irreparable harm. RF  the district court